James Weiler; AZ Bar No. 034371
**WEILER LAW PLLC**
5050 N. 40th St., Suite 260
Phoenix, AZ 85018
Tel & Fax: 480.442.3410
jweiler@weilerlaw.com

Attorney for Plaintiff
Danielle Doggett

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Danielle Doggett**; an Arizona Resident; | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **CTVT Motors, Inc. d/b/a Camelback Toyota**, a Delaware Corporation; and **Samir Hamad and spouse**, an Arizona Resident, | |
| | **(Jury Trial Requested)** |
| Defendants. | |

Plaintiff Danielle Doggett, for her Complaint against Defendant CTVT Motors, Inc. and Samir Hamad and spouse (collectively, "Defendants") hereby alleges as follows:

## **NATURE OF THE CASE**

1. Plaintiff submits this Complaint for relief against Defendants arising from the sexual harassment (hostile work environment and quid pro quo), assault, and battery that she was subjected to during her employment with Defendant CTVT Motors, Inc. d/b/a Camelback Toyota ("Camelback Toyota").

2. Defendant Camelback Toyota's employee, Defendant Samir Hamad ("Hamad"), physically abused Plaintiff and subjected her to extreme psychological abuse.

3. Defendant Camelback Toyota was aware of Defendant Hamad's sexual harassment, physical abuse, and psychological abuse of Plaintiff and failed to take actions to remove Defendant Hamad from the workplace or take any actions to prevent further abuse.

4. This action is brought to recover damages resulting from Defendant Camelback Toyota's violations of Title VII of the Civil Rights Act of 1964.

5. This action is also brought to recover damages resulting from the common law torts of assault, battery, and intentional infliction of emotional distress.

## PARTIES, JURISDICTION, AND VENUE

1. At all relevant times to the matters alleged herein, Plaintiff was a resident of Maricopa County, Arizona.

2. Upon information and belief, Defendant CTVT Motors, Inc. d/b/a Camelback Toyota is a Delaware Corporation, which is registered to conduct business and is currently doing business in Maricopa County, Arizona. Upon information and belief, its principal place of business is in Maricopa County, Arizona.

3. Upon information and belief, Defendant Samir Hamad and spouse are residents of Maricopa County, Arizona.

4. All acts complained of herein occurred in Maricopa County, Arizona.

5. This Court has jurisdiction over Defendant Camelback Toyota and the subject matter set forth in this Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq* ("Title VII").

6. This Court has federal question jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. §1331 in that claims set forth in this claim arise under federal law.

7. Plaintiff's state law tort claims are sufficiently related to her federal claims that they form the same case or controversy. This Court therefore has supplemental jurisdiction over Plaintiff's state law claims against Defendants pursuant to 28 U.S.C. §1367.

8. The actions alleged to be unlawful were committed within, and had their primary effect in, the jurisdiction of the United States District Court for the District of Arizona.

9. Plaintiff was, at all relevant times, an employee of Defendant Camelback Toyota within the meaning of Title VII.

10. At all relevant times, Defendant Camelback Toyota has continuously been an employer, employing fifteen or more employees within the meaning of Title VII.

11. All conditions precedent to filing a lawsuit have been met under 42 U.S.C. §2000e-5, including Plaintiff filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the issuance of a right to sue letter. This lawsuit has been filed within 90 days of the receipt of the notice of the right to sue letter.

## FACTUAL ALLEGATIONS

12. Defendant Camelback Toyota is in the business of operating a car dealership located in Phoenix, Arizona.

13. From on or about July 27, 2020 until September 14, 2021, Plaintiff was employed by Defendant Camelback Toyota as a Finance Manager.

14. At all times during Plaintiff's employment, Defendant Samir Hamad was employed by Defendant Camelback Toyota as a New Car Sales Manager.

15. Upon information and belief, Defendant Hamad is currently employed by

Defendant Camelback Toyota as the New Car Sales Manager.

16. At the end of 2020 and early 2021, Plaintiff entered into a romantic relationship with Defendant Hamad.

17. In early 2021, Defendant Hamad became verbally abusive, jealous, and controlling of Plaintiff.

18. In response, Plaintiff attempted to end the relationship with Defendant Hamad.

19. However, Defendant Hamad threatened her that if she did not continue the relationship or reported his abuse to Defendant Camelback Toyota he would ensure that she would make less commissions by manipulating the deals that would be assigned to her so that she would get the least profitable deals.

20. Defendant Hamad repeatedly told Plaintiff that he was "untouchable" and "indispensable" to Defendant Camelback Toyota.

21. Plaintiff, a single parent, was afraid of losing her job or having her commissions reduced if she did not comply with Defendant Hamad's demands to remain in a relationship.

22. By the Spring of 2021, numerous employees of Defendant Camelback Toyota including the GM, Directors, and Managers had all observed or been informed of the harassment, abuse, and violence that Plaintiff had been subjected to by Defendant Hamad.

23. Plaintiff's co-workers and supervisors commented on the bruises that Defendant Hamad's physical abuse had left on her face and body.

24. Defendant Hamad would grab and forcefully pinch Plaintiff in fits of rage

and jealousy to get her to comply with his demands.

25. Defendant Hamad would forbid Plaintiff from speaking with any male co-workers.

26. When Defendant Hamad observed her speaking with a male co-worker he would pull her into an office and squeeze her arms so hard that it would leave bruises while he verbally berated her.

27. During the workday Defendant Hamad would send abusive and threatening messages to Plaintiff.

28. Plaintiff's co-workers also observed the abusive and threatening messages that Defendant Hamad had been sending Ms. Doggett through Facebook Messenger.

29. In or around June 2021, Defendant Hamad's abuse escalated to a violent assault and threats to the life of Plaintiff.

30. In June 2021, Defendant Hamad grabbed Plaintiff by the head and slammed her face into a car windshield. Defendant Hamad then pulled her into the car and began to strangle her.

31. While Defendant Hamad was strangling Plaintiff, he was also verbally berating her. He called her a "cunt" and yelled at her, "bitch, you are a nobody."

32. The violent attack continued until a bystander began yelling at Defendant Hamad to stop and that he was calling the police.

33. On or about August 12, 2021, Defendant Hamad physically assaulted Plaintiff during her lunch break.

34. On that day, Defendant Hamad followed Plaintiff to a restaurant across the street from Defendant Camelback Toyota's dealership.

35. Defendant Hamad became enrage and was verbally abusing her, so she left the restaurant.

36. Defendant Hamad followed her out to the parking lot where he grabbed her by her hair and slammed her face into a car. He then attempted to strangle Plaintiff.

37. Employees and patrons of the restaurant came out and yelled at Defendant Hamad to get him to stop attacking Plaintiff.

38. The patrons of the restaurant called the police in response to the incident.

39. When the police officers arrived they came to Defendant Camelback Toyota's dealership and informed employees that they were responding to reports that a woman that works at the dealership had been assaulted.

40. The police officers were directed to speak with Plaintiff by her co-workers.

41. Plaintiff was too terrified of Defendant Hamad retaliating against her to report the incident to the police at that time.

42. However, Plaintiff's co-workers were clearly aware that the police had been called to the dealership because Defendant Hamad had physically assaulted Plaintiff.

43. Defendant Camelback Toyota did not take any actions to address Defendant Hamad's assault of Plaintiff.

44. Later that evening, Defendant Hamad showed up uninvited to Plaintiff's home and violently attacked her again.

45. During the attack, Defendant Hamad stated that he would rather kill her than let anyone else have her.

46. Defendant Hamad smashed Plaintiff's TV, threw Plaintiff to the ground, and began punching her in the face.

47. Plaintiff's children were home at the time and heard her screams.

48. Plaintiff's son stopped the attack by telling Defendant Hamad that he was calling the police.

49. Plaintiff was terrified that if she made any further attempt to end the relationship with Defendant Hamad he would kill her.

50. Defendant Hamad continued to maintain control over Plaintiff by manipulating the deals that would be assigned to her.

51. If Plaintiff failed to comply with Defendant Hamad's demands he would stack less favorable deals against her and thus reduce her commissions.

52. In September of 2021, Plaintiff informed the GM of the dealership that she was afraid to continue working in the same dealership as Defendant Hamad.

53. In response, the GM stated that he would not be terminating Defendant Hamad and that there was nothing that he would do about her concerns.

54. Due to Defendant Camelback Toyota's failure to take any action against Defendant Hamad or to provide Plaintiff with a safe work environment, Plaintiff was forced to resign her employment.

55. Plaintiff's working conditions were so intolerable that she was compelled to resign.

56. Plaintiff's last day of employment with Defendant Camelback Toyota was on or about September 14, 2021.

57. Despite leaving Camelback Toyota, Defendant Hamad continued to harass and threaten Plaintiff.

58. Plaintiff received photos of her home with messages stating that her house

would be burnt down.

59. Upon information and belief, the messages were sent by Defendant Hamad or his family members.

60. Defendant Hamad showed up at Plaintiff's subsequent employer's place of business to verbally berate and harass her. Defendant Hamad had to be escorted off of the property by management.

61. In response, Plaintiff filed a police report and obtained a restraining order against Defendant Hamad.

62. As a result of the harassment and abuse, Plaintiff suffered extreme emotional distress.

63. As a result of Defendants' acts or omissions, Plaintiff was damaged.

**COUNT I**
**TITLE VII – HOSTILE WORK ENVIRONMENT**
**(Defendant Camelback Toyota)**

64. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

65. At all relevant times, Plaintiff was an employee and Defendant Camelback Toyota was an employer as defined by Title VII.

66. At all times relevant, Plaintiff performed her job duties to satisfactory or exemplary levels.

67. Plaintiff was subjected to severe and pervasive harassment by Defendant Hamad, the New Car Sales Manager for Defendant Camelback Toyota.

68. Defendant Camelback Toyota knew or should have known of the harassment to which Plaintiff was subjected, and wholly failed to take proper remedial action.

69. Defendant Hamad's misconduct was sexual in nature.

70. Defendant Hamad's misconduct was unwelcomed.

71. Defendant Hamad's misconduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

72. Defendant Hamad's misconduct was ongoing and persistent.

73. Plaintiff subjectively and objectively believed that her work environment was hostile and abusive.

74. Plaintiff's working conditions were so intolerable that a reasonable person in Plaintiff's position would feel compelled to resign.

75. Defendant's conduct was malicious and reckless and done with an evil hand and mind.

76. As a result, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT II
## TITLE VII – QUID PRO QUO SEXUAL HARASSMENT
**(Defendant Camelback Toyota)**

77. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

78. Defendant Hamad in his position as an employee of Defendant Camelback Toyota had the authority or ability to make decisions that impacted Plaintiff's earnings and ability to generate commissions.

79. Defendant Hamad conditioned the type of deals that Plaintiff received to generate commission on her continued romantic relationship with Defendant Hamad.

80. Based upon Defendant Hamad's conduct, Plaintiff understood that her ability to generate commissions in a manner comparable to her co-workers was conditioned on

her continued romantic relationship with Defendant Hamad.

81. When Plaintiff objected to continuing her romantic relationship with Defendant Hamad, he did negatively impact her ability to generate commissions by stacking less profitable deals against her.

82. Plaintiff's working conditions were so intolerable that a reasonable person in Plaintiff's position would feel compelled to resign.

83. Defendant's conduct was malicious and reckless and done with an evil hand and mind.

84. As a result, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT III

## ASSAULT

### (Defendant Hamad)

85. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

86. Defendant Hamad intended to cause offensive contact with, or harm to, Plaintiff;

87. Defendant Hamad intended to cause apprehension of immediate harm or contact to Plaintiff.

88. Defendant Hamad did cause apprehension of immediate harm or contact to Plaintiff.

89. Defendant Hamad's conduct was malicious and reckless unlawful conduct.

90. Defendant engaged in the aforementioned conduct with an evil hand and mind.

91. As a result, Plaintiff was damage in an amount to be proven at trial.

## COUNT IV

## BATTERY

**(Defendant Hamad)**

92. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

93. Defendant Hamad committed a harmful or offensive touching to Plaintiff's person.

94. Defendant Hamad intended to commit a harmful or offensive touching.

95. Defendant Hamad's conduct was malicious and reckless unlawful conduct.

96. Defendant engaged in the aforementioned conduct with an evil hand and mind.

97. As a result of Defendant Hamad's misconduct, Plaintiff was damaged in an amount to be proven at trial.

## COUNT V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Defendant Hamad)**

98. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

99. Defendant Hamad committed acts that were extreme and outrageous including assault, battery, and sexual harassment of Plaintiff.

100. Defendant Hamad's conduct was either intentional or reckless.

101. Defendant's extreme and outrageous conduct caused Plaintiff severe

emotional distress.

102. Defendant Hamad's conduct was malicious and reckless unlawful conduct.

103. Defendant engaged in the aforementioned conduct with an evil hand and mind.

104. As a result, Plaintiff was damaged in an amount to be proven at trial.

## COUNT VI

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Defendant Camelback Toyota)

105. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

106. At all relevant times, Defendant Hamad was an employee of Defendants.

107. Defendant Hamad is alleged to have engaged in sexual harassment, assault, battery, and intentional infliction of emotional distress towards Plaintiff.

108. Defendant Camelback Toyota had knowledge of Defendant's unlawful actions taken against Plaintiff, an employee of Defendant Camelback Toyota.

109. Defendant failed to take any action or conduct a prompt investigation upon learning of Defendant Hamad's conduct.

110. Defendants' acts and/or omissions were extreme and outrageous.

111. Defendants' conduct was intentional or reckless.

112. Defendant's reckless disregard of the consequences of failing to react to Defendant Hamad's conduct was extreme and outrageous conduct.

113. Defendant's extreme and outrageous conduct caused Plaintiff severe emotional distress.

114. Defendant engaged in the aforementioned conduct with an evil hand and mind.

115. As a result, Plaintiff was damaged in an amount to be proven at trial.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays:

A. For the Court to declare and find that the Defendant Camelback Toyota violated Plaintiff's rights under Title VII;

B. For the Court to declare and find that Defendant Hamad committed the following acts:

   i. assault;

   ii. battery; and

   iii. Intentional infliction of emotional distress;

C. For the Court to declare the Defendant Camelback Toyota is liable for intentional infliction of emotional distress:

D. For the Court to award lost wages damages including back pay and front pay;

E. For the Court to award special damages;

F. For the Court to award compensatory damages to the greatest extent permitted by law including, but not limited to, compensation to Plaintiff for non-pecuniary loss, including pain, suffering, emotional distress, and humiliation resulting from Defendants conduct set forth herein;

G. For the Court to award punitive damages for Defendants' malicious and reckless indifference to the rights of Plaintiff through their unlawful conduct and for their acts or omissions conducted with an evil hand and mind as set

forth above;

H. For the Court to award prejudgment and post-judgment interest at the highest legal rate;

I. For the Court to award such other monetary, injunctive, equitable, and declaratory relief as the Court deems just and proper;

J. For the Court to award Plaintiff's reasonable attorneys' fees and costs pursuant to Title VII, and all other causes of action set forth herein;

K. For an award of Taxable Costs; and

L. Any other remedies or judgments deemed just and equitable by this Court.

RESPECTFULLY SUBMITTED March 2, 2023.

**WEILER LAW PLLC**

By: /s/ James Weiler
5050 N. 40th St., Suite 260
Phoenix, AZ 85018
Attorney for Plaintiff